## Gossett, et al. v. Chandler.

(Decided July 1, 1924.)

### Appeal from Harrison Circuit Court.

1. Limitation of Actions—Deed May Not be Reformed After 25 Years.—A deed granting a passway cannot be reformed after 25 years.

2. Easements—Deed Held to Reserve Right to Construct Gates Across Passway—"Thereon."—A deed conveying a passway, and requiring grantors to keep fenced, but reserving to them right to erect gates "thereon," held to give them right to erect gates across passway, and not only in side fences.

3. Easements—Right to Construct Gate Requires One that would Not Unnecessarily Obstruct Use of Passway.—Grantors of passway reserving right to construct gate should not do so at a point that would unnecessarily obstruct or interfere with grantee's use of the passway, such as on bank of a creek, requiring one to wade in creek to open gate.

THOMAS E. KING and DANIEL DURBIN for appellants.

SWINFORD & SWINFORD for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Reversing.

The appellants and defendants below, H. V. Gossett and Josie Gossett Parker, own land on both sides of Twin creek and Scott county turnpike in Harrison county, which they partly inherited from their father and mother, both of whom are now dead, and they purchased the interest of the other heirs which vested them with the entire title. Immediately at the rear of and adjoining one of their tracts, the appellee and plaintiff below, Clayburn Chandler, owns a farm, which he acquired prior to June 9, 1891. On that day defendants' father and mother, as the then owners of the land on the side of the pike at the rear of which was plaintiff's farm, executed, acknowledged and delivered to the latter a deed

whereby they, in consideration of $160.00 conveyed to him a passway sixteen feet wide across their tract from his land to the pike, a distanse of about one thousand feet. Immediately following the description of the strip of land in the deed there is this language: "The said conveyance is a passway sixteen feet wide. The first party is to fence the said passway and have a right to place a gate thereon, at some convenient point thereon, if they desire. The said passway is to be fenced in sixty days, and if it should not be the deferred payment is not to be made until it is done; the first parties have the right to travel said passway. This being the same for which a proceeding was commenced and had in the Harrison county court at its April, May and June terms 1891."

The grantors lived for more than 25 years after they executed and delivered the deed, and they not only fenced the passway pursuant to its terms, but they maintained the fences during their respective lives. A short while before the filing of this equity action against them by plaintiff, defendants erected a gate across the passway at its terminus near the pike and between it and Twin creek, which runs parallel with the pike at that point, and a distance of about 38 feet from it. Plaintiff removed the gate by lifting it from its hinges, and then filed this action against defendants to enjoin them from rehanging it and from erecting any gate across the passway at any point, upon the ground that he was entitled to the passway as an open lane and free from any obstructions whatever.

In their answer defendants denied some of the material averments of the petition and especially relied on the terms of the deed executed by their ancestors as giving them the right to erect a gate across the passway "at some convenient point thereon," and alleged that the most convenient point was at the pike, the place where they had erected it. Plaintiff took issue with that construction of the deed and by his counsel insisted that the word "thereon," as used in the deed meant, and the parties so understood, that the grantor should have the right to erect a gate in, along and as a part of the fence enclosing the passway, and not that a gate might be erected by defendants *across* the passway at any point. It was also averred in amended pleadings filed by plaintiff that the deed was executed in compromise and settlement of a proceeding theretofore instituted in the Harrison county court by plaintiff against the then owners of

the land to acquire a passway ''of necessity'' over the lands of the latter and that the agreement was reached on the day of the meeting of the commissioners on the land, who were appointed in that proceeding for the purpose of making a report to the court as the law directs, and that the oral agreement then made was, that the grantors should have the right to put gates in the fenses enclosing the passway so as to get from one part of their land to the other and that it was not contemplated that a gate should be erected across the passway, and that the deed in so far as it failed to so express the contract was not in accord with the understanding of the parties. There is no *express* averment of either fraud or mistake on the part of any of the parties by which the alleged true understanding was omitted, but the reply to that pleading denied that there was any such fraud or mistake and we, therefore, might be authorized to treat the pleadings as sufficient to raise that issue. If so treated, we must confess that the evidence is sufficient to authorize a reformation of the deed; but plaintiff in pleading to the assertion of that right interposed the statute of limitations which we think is an effectual bar to the right of plaintiff to reform the deed. The court, after preparation and submission, sustained the prayer of the petition and perpetually enjoined defendants from erecting any gate across the passway, and to reverse that judgment they prosecute this appeal.

Since plaintiff's right to reform the deed is barred by the statute of limitations, as we have seen, the determinative point in the case is, what the parties meant by the use of the word ''thereon'' as used in the deed in connection with the reserved right of the grantors to erect a gate, *i. e.*, whether it was intended thereby that they should have the right to put a gate *across* the passway at some convenient point, or only to erect gates at some place in the enclosing fences, as is contended by plaintiff. Mr. Webster, in defining the word ''on,'' says: ''The general signification of *on* is situation, motion, or condition with respect to contact or support beneath; as: 1. Over and in contact with; at the surface of, and supported by.'' In defining the word ''there,'' he says: ''In or at that place; in or at a place other than that of the speaker; at that point; opposed to *here*.'' And in defining the compound word ''thereon'' he refers to the separate definitions of those two words. So that, the gate in this case in order to be on the pass-

way, must, according to Mr. Webster's definition, be over it, in contact with it and supported by it; and the prefix "there" to the word "on" would only designate and point out the place over the passway that was supporting the gate or the place that the gate was "over and in contact with" it. It is true that the word "on" as well as the compound word "thereon" sometimes denotes the side or direction of the referred to object with reference to some other object, an illustration of which is, as given in briefs, that "Frankfort is on the Kentucky river;" but we are convinced that the word "thereon," as employed in the deed, was never intended by the parties to be given the latter significance, because, under its express terms, the grantors therein were compelled to originally construct the fences, and there being no specifications as to the kind of fences they could be made entirely out of gates, and the necessity of reserving the right to do so was wholly wanting. On the contrary, without the expressed reserved right to construct gates across the passway, the grantors would probably not have the right to do so under the facts and circumstances of the case, since the deed provided for a passway through a fenced lane and to preserve the right they inserted the language that "the first party is to   .   .   .   have a right to place a gate thereon, at some convenient point thereon, if they desire," We might well imagine reasons for reserving that right, among which might be mentioned, that it was the desire to prevent the collection of stock and cattle in the *cul-de-sac* formed by the passway from the pike to the gate where the passway enters plaintiff's land. Another possible one was, that in carrying stock of the grantors from the fields on one side of the passway to those on the other, the gate would prevent the animals from escaping by going upon the pike from the passway and getting away from the control of the owner. There might be other imaginable reasons; but whether there were *any* or not is a matter that does not concern us, since we are confined to a construction of the language of the parties as inserted by them in their deed and which plaintiff accepted and has exercised his rights thereunder since the day of its delivery. Having this view as to the correct interpretation of the deed, there exists no necessity for considering the rights of the parties with reference to the erection of gates across the passway in the absence of the language found in the deed which we have considered.

But, it is insisted that even if defendants have the right to put a gate across the passway, they should not do so at a point that would unnecessarily obstruct or interfere with plaintiff's right to use it, which is true; and that the point at which the gate was erected by defendants was so near the creek as to require the traveler on the passway to get into the water in the creek in order to open the gate at certain seasons when there was only a moderate amount of water in it and which, under the proof was more or less frequent. There was some testimony to prove that such objection could be obviated by placing the gate immediately upon the line of defendant's farm, and at the edge of the pike, with the opening of the on to the pike, and if defendants desire to erect a gate at or near that terminus of the pike, they should in no event construct it in any other manner. If, however, they should desire to construct it at any other point on the passway, which would not unnecessarily inconvenience plaintiff in the use of it, they should be permitted to do so.

Much argument is indulged in as to whose duty it is to maintain and keep in repair the fences on either side of the passway, and a considerable portion of the evidence is introduced, as bearing upon that point and to show the construction that the parties placed upon the deed so as to enable the court to determine upon whom that duty devolved under its terms. But, we are not concerned with that question on this hearing, since this litigation involves only the *one* question as to the right of defendants under a correct construction of the deed to erect a gate *across* the passway at some convenient point, due regard being had to the rights of the owner of the dominant estate. Having concluded that a proper construction of the deed gave that right to defendants, it follows that the court erred in denying it to them; but there was some evidence to sustain a finding that the particular place where defendants located the gate, and by causing it to open towards the creek, plaintiff's right to the enjoyment of the easement was possibly thereby unreasonably interfered with to such an extent as to give him just and legal cause for complaint, and because of that condition of the record the cost of this appeal will be equally divided between the parties, with leave to take additional proof on the issue of location.

Wherefore, the judgment is reversed with directions to set it aside and to dismiss the petition, but with the right in defendants to erect a gate across the passway as herein pointed out.